**Opinion issued January 24, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00458-CV

_____

**HOWARD INDUSTRIES, INC., SIEMENS INDUSTRY, INC. A/K/A SIEMENS ENERGY & AUTOMATION, INC., HD SUPPLY ELECTRICAL, LTD. A/K/A HD SUPPLY, INC., A & H ELECTRIC CO., LLC F/K/A A&H ELECTRIC CO., A&H ELECTRIC COMPANY, LLC, AND A&H ELECTRIC COMPANY, Appellants**

**V.**

**CROWN CORK & SEAL COMPANY, LLC, Appellee**

---

**On Appeal from the 410th Judicial District**
**Montgomery County, Texas**
**Trial Court Case No. 09-04-04232-CV**

---

**O P I N I O N**

A jury found in favor of Crown Cork & Seal Company, LLC ("Crown") on its claim for breach of an implied warranty of merchantability against appellants Howard Industries, Inc., Siemens Industry, Inc. a/k/a Siemens Energy & Automation, Inc., HD Supply Electrical, Ltd., a/k/a HD Supply, Inc., A&H Electric Co., LLC f/k/a A&H Electric Co., A&H Electric Company, LLC, and A&H Electric Company. The jury determined that Crown had suffered $69,400 in damages as a result of the breach. The trial court rendered judgment on the jury's findings. The court also awarded Crown attorney's fees of $150,000 for trial preparation and attendance and an additional $50,000 for appellate attorney's fees.

The appellants raise one issue on appeal.[1] They assert that the trial court erred in awarding attorney's fees to Crown on its breach of the implied warranty of merchantability claim.

We affirm.

## Background Summary

Crown, a manufacturer of aluminum drinking cans, hired A&H Electric to complete a turnkey installation of a new industrial-size transformer at Crown's facility. A&H Electric delivered and installed the transformer at Crown's facility

---

[1] This appeal, originally filed in the Ninth Court of Appeals, Beaumont, Texas, was transferred to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

2

in May 2005. Howard Industries had manufactured the transformer, which was sold to Crown through a distribution chain that included Siemens, HD Supply, and A&H Electric.

In August 2007, the transformer failed. Crown filed suit against Howard Industries, Siemens, A&H Electric, and HD Supply. Crown asserted causes of action for breach of contract, breach of express warranty, and breach of implied warranty of merchantability.

The case was tried to a jury. After Crown had presented its evidence, the trial court granted a directed verdict on Crown's breach of express warranty claim in favor of all defendants, except A&H Electric. The trial court also granted a directed verdict on Crown's breach of contract claim in favor of all defendants. The trial court explained that it had granted the motion for directed verdict on Crown's breach of contract claim, not because there was no contract, rather, the trial court granted the motion because "this is a warranty case." The trial court further explained, "[T]here is no question [the defendants] gave [Crown] what [it] bought. It just maybe wasn't in the shape you thought it was going to be in. So, yeah, granted as to [breach of] contract."

The parties also reached an agreement during trial regarding the amount of Crown's reasonable and necessary attorney's fees. Although they did not concede that Crown was entitled to attorney's fees, the defendants stipulated that Crown's

3

attorney's fees were $150,000 through trial, $25,000 for an appeal to the court of appeals, and $25,000 for review by the supreme court.

The jury found that A&H Electric had not breached an express warranty. The jury did, however, find that Howard Industries, Siemens, A&H Electric, and HD Supply had each breached an implied warranty of merchantability with respect to the transformer. Because it found in favor of Crown on the implied warranty claim, the jury was asked to determine Crown's economic damages. The jury found that Crown had suffered damages of $69,400, representing Crown's cost to replace the transformer.

Following trial, Crown filed a motion for entry of judgment. In the motion, Crown argued that, because its breach of implied warranty of merchantability claim was "grounded" in contract, rather than in tort, it was entitled to recover its attorney's fees under section 38.001(8) of the Civil Practice and Remedies Code. It asserted that the contractual nature of its implied warranty claim was demonstrated by the fact that it had sought and recovered only economic damages.

The defendants filed a cross-motion for entry of judgment. They asserted that Crown was not entitled to attorney's fees because Texas law does not provide for an attorney's fees award based on a claim of breach of implied warranty of merchantability.

4

The trial court implicitly granted Crown's motion for entry of judgment when it signed the judgment awarding Crown actual damages of $69,400, as found by the jury, attorney's fees of $150,000 for trial preparation and attendance, and appellate attorney's fees totaling $50,000.

Howard Industries, Inc., Siemens Energy & Automation, Inc., A&H Electric Company, and HD Supply, Inc. (collectively, "Appellants") appealed the trial court's judgment. Appellants raise one issue on appeal, asserting that the trial court erred by awarding Crown its attorney's fees.

## Attorney's Fees Award

### A.     Standard of Review

On appeal, Appellants do not question the amount of the attorney's fees awarded to Crown. Rather, Appellants challenge Crown's right to recover attorney's fees under Civil Practice and Remedies Code section 38.001(8), the section under which Crown sought to recover its attorney's fees in the trial court. *See* TEX. CIV. PRAC. & REM. CODE ANN. §38.001(8) (Vernon 2008).

Appellants recognize that, because the transaction here involved the sale of goods, the Uniform Commercial Code ("UCC")—adopted in Texas as Chapter Two of the Business and Commerce Code—governs Crown's breach of implied warranty of merchantability claim. *See* TEX. BUS. & COM. CODE ANN. §§ 2.101–.725 (Vernon 2009). Appellants point out that attorney's fees are not recoverable

5

under the UCC provisions governing Crown's breach of implied warranty claim. The determination of whether Crown was entitled to attorney's fees under a particular statute is a question of law, which we review de novo. *See Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *Bollner v. Plastics Solutions of Tex., Inc.*, 270 S.W.3d 157, 171 (Tex. App.—El Paso 2008, no pet.).

**B.      Analysis**

The general rule in Texas is that a party who prevails in a lawsuit is entitled to recover attorney's fees only if authorized by statute or contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). In the trial court, Crown did not assert that the UCC provisions governing its breach of implied warranty claim authorized the recovery of attorney's fees. Rather, Crown claimed that Civil Practice and Remedies Code section 38.001(8) authorized its attorney's fees recovery. Pursuant to that provision "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Crown averred that its implied warranty claim was "grounded in contract" because it sought only economic damages. According to Crown, this is sufficient to bring the claim within section 38.001(8).

6

We must determine if Crown's claim for breach of implied warranty is in essence a breach of contract action. We agree with Crown that our analysis is guided by the Supreme Court of Texas's decision in *Medical City Dallas, Ltd. v. Carlisle Corporation*, 251 S.W.3d 55 (Tex. 2008). There, the court determined that a claim for breach of express warranty governed by UCC article 2 is a suit based on a written contract, even though the plaintiff did not plead a breach of contract claim and did not recover on that theory. *See id.* at 59, 63. The supreme court held that a party who prevails on a breach of express warranty claim may recover attorney's fees under section 38.001(8). *See id.*

The *Medical City* court began its analysis by noting that the UCC provisions pertaining to the remedies for breach of warranty are silent on the recovery of attorney's fees.[2] *See id.* at 59 (citing TEX. BUS. & COM. CODE ANN. §§ 2.714–.715 and cmt.). The court determined that recovery of attorney's fees may nonetheless be authorized under another statue. *See id.* at 60. It concluded that Civil Practice and Remedies Code section 38.001 is such a statute. *Id.*

The supreme court noted that the legislature requires courts to construe section 38.001 liberally to promote its underlying purposes. *See id.* at 59; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 38.005 (Vernon 2008). The court analyzed

---

[2] These provisions also apply to Crown's breach of implied warranty of merchantability claim. *See* TEX. BUS. & COM. CODE ANN. §§ 2.714–.715 (Vernon 2009).

7

the nature of an express warranty claim and determined that "a claim based on an express warranty is, in essence, a contract action" in that it "involves a party seeking damages based on an opponent's failure to uphold its end of the bargain." *See id.* at 58, 61. The court further noted that, although a breach of warranty claim is distinct from a breach of contract claim, it is "a creature of contract" and is "contract-based." *See Medical City*, 251 S.W.3d at 60–61.

As part of its analysis, the court also considered the type of damages sought. *See id.* 61–62. The *Medical City* plaintiff had sought damages only for economic loss. *See id.* at 61. This also supported the court's conclusion that the plaintiff's breach of warranty claim was based in contract, entitling the plaintiff to recover its attorney's fees. *See id.* In this regard, the court explained, "Under the economic loss rule, the nature of the injury helps determine which duty or duties are breached and, ultimately, which damages are appropriate: 'When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract.'" *Id.* (citing *Am. Nat. Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 282 (Tex. 1990) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

More recently, in *1/2 Price Checks Cashed v. United Automobile Insurance Co.*, the Supreme Court of Texas applied its analysis from *Medical City* to conclude that a holder suing the drawer on a dishonored check under the UCC

8

may recover attorney's fees under section 38.001(8). *1/2 Price Checks*, 344 S.W.3d 378, 388, 392 (Tex. 2011). The court determined that a suit on a dishonored check is a suit on a contract. *See id.* at 386. A drawer unconditionally promises not only to pay the payee, but also to pay a subsequent holder of the instrument. *See id.* The court concluded that the check itself is the contract. *See id.*

> The *1/2 Price Checks* court also explained,

> Importantly, section 38.001(8) does not distinguish between formal contracts and other types of contracts, nor between codified contract claims as compared to those that have not been codified. Section 38.001(8) does not narrow its scope to claims for breach of contract, nor differentiate between different types of contracts: it merely applies to claims on written or oral contracts.

*Id.* at 388.

Citing *Medical City*'s analysis, the *1/2 Price Checks* court also considered the type of damages being sought by the plaintiff. *See id.* at 387. It noted that the plaintiff there sought damages only for its economic loss. *See id.* The court concluded, "Here, Half-Price's damages are solely based on its economic loss due to UAIC's failure to pay the amount of the dishonored check—the fact that Half-Price sued pursuant to a statutory provision does not negate the reality that its damages sound in contract." *Id.* at 387.

Utilizing *Medical City* and *1/2 Price Checks* to guide our analysis, we turn to our determination of whether section 38.001(8) applies to Crown's breach of

implied warranty claim. We first address Appellants' contentions that Crown cannot recover attorney's fees under section 38.001(8) because (1) "there was no oral or written contract between Crown and any Defendant," and (2) Crown did not prevail on a breach of contract claim. Appellants emphasize that they obtained a directed verdict on Crown's breach of contract claim. Appellants also aver that Texas law does not permit recovery of attorney's fees under section 38.001(8) when a claim merely "sounds in contract."

Appellants' contentions are contrary to the supreme court's analyses and holdings in *Medical City* and in *1/2 Price Checks*. The *Medical City* court held that the plaintiff there could recover its attorney's fees under section 38.001(8) for its breach of express warranty claim even though there was no separate contract between the parties and despite the fact that the plaintiff had neither pleaded a breach of contract cause of action nor prevailed on such theory at trial. *See* 251 S.W.3d at 58. The court determined that section 38.001(8) encompasses claims that are simply contract-based, such as breach of an express warranty claim, which is a "creature of contract." *See* at 60–61.

The supreme court reiterated this position in *1/2 Price Checks*, stating, "[T]hough perhaps not a traditional breach of contract claim, Half-Price has brought a claim that is contract-based." 344 S.W.3d at 388. The court made clear that it was insignificant for section 38.001 purposes that the plaintiff there had

prevailed on a UCC statutory claim rather than on a breach of contract cause of action. *See* 344 S.W.3d at 387. The court explained, "As a general matter, we further note that section 38.001 lists general types of claims, as opposed to specific causes of action." *Id.* at 388 n.27. Thus, Appellants' contentions are without merit and do not support a conclusion that Crown cannot recover its attorney's fees under section 38.001(8) for its breach of implied warranty of merchantability claim.

Here, if Crown's claim for breach of implied warranty of merchantability is a contract-based claim, then it is entitled to recover attorney's fees under section 38.001(8). *See Medical City*, 251 S.W.3d at 60 (stating that decision whether 38.001 applied to express warranty claim would be made by determining whether such claim is a suit based in contract). The *Medical City* court noted that, although breach of warranty and breach of contract claims are distinct claims with distinct remedies, an express warranty "is . . . a part of the basis of the bargain and is contractual in nature." *See id.* The same could be argued for an implied warranty of merchantability claim.

Pursuant to the UCC, "a warranty that the goods shall be merchantable is implied in a contract for their sale if their seller is a merchant with respect to goods of that kind." TEX. BUS. & COM. CODE ANN. § 2.314(a) (Vernon 2009); *see also Printing Ctr. of Tex., Inc. v. Supermind Publ'g Co.*, 669 S.W.2d 779, 784–85 (Tex.

11

App.—Houston [14th Dist.] 1984, no writ.) (regarding implied warranty of merchantability as contractual term in breach of contract case). The Supreme Court of Texas has explained, "An implied warranty is a representation about the implied quality or suitability of a product that the law implies and imports into a contract." *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 435 (Tex. 1997). In other words, an implied warranty becomes part of the terms of a contract. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 439 (Tex. 1995) (quoting Biddle, A TREATISE ON THE LAW OF WARRANTIES IN THE SALE OF CHATTELS 1 (Philadelphia, Kay & Brother 1884)); *see also Certain–Teed Prods. Corp. v. Bell,* 422 S.W.2d 719, 721 (Tex. 1968) (stating that "a warranty which the law implies from the existence of a written contract is as much a part of the writing as the express terms of the contract"); *Lee v. Perez*, 120 S.W.3d 463, 468 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (explaining that an implied warranty "is part of the contract itself."); *W. Tank & Steel Corp. v. Gandy*, 385 S.W.2d 406, 409 (Tex. Civ. App.—Texarkana 1964, no writ) ("Warranty, either express or implied, must grow out of contractual relations between the parties."). One court expressly stated that "[t]he implied warranty is contractual in nature." *Darr Equip. Co. v. Owens*, 408 S.W.2d 566, 569 (Tex. Civ. App.—Texarkana 1966, no writ).

The foregoing case law aside, we recognize that the Supreme Court of Texas has instructed that "[i]mplied warranties are created by operation of law and

are grounded more in tort than in contract." *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 704 (Tex. 2008) (citing *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984) and other earlier decisions for this proposition). The supreme court explained in *JCW Electronics* that "[c]onceptually, the breach of an implied warranty can either be in contract or in tort depending on the circumstances." *Id.* The court noted that "[a]s Dean Prosser observed long ago, this area of the law is complicated 'by the peculiar and uncertain nature and character of warranty, a freak hybrid born of the illicit intercourse of tort and contract.'" *Id.* at 704–05 (citing William L. Prosser, THE ASSAULT UPON THE CITADEL (STRICT LIABILITY TO THE CONSUMER), 69 Yale L.J. 1099, 1126 (1960)).

In *JCW Electronics* the supreme court explained that "[t]he precise nature of the claim is ordinarily identified by examining the damages alleged: when the damages are purely economic, the claim sounds in contract, but a breach of implied warranty claim alleging damages for death or personal injury sounds in tort." *Id.* at 705 (citations omitted). As mentioned, the supreme court in *Medical City* and in *1/2 Price Checks* also discussed the importance of the type of damages sought in determining whether a plaintiff's claim is based in contract and thus supports recovery of attorney's fees under section 38.001(8). *See 1/2 Price Checks*, 344 S.W. at 388; *Medical City*, 251 S.W.3d at 60–61.

13

Here, Crown sought only the economic damages that it had suffered as a result of the transformer's failure. It sought no other damages. Given the nature of the injury alleged, we conclude that Crown's breach of implied warranty claim was based in contract. Accordingly, we further conclude that it is a claim to which section 38.001(8) applies. *See Medical City*, 251 S.W.3d at 60–63; *see also /2 Price Checks*, 344 S.W. at 387–88.

As support for their position that an appellant may not recover attorney's fees for a breach of implied warranty claim, appellants point to the Supreme Court of Texas's statement in *Hyundai Motor Co. v. Rodriguez* that a plaintiff may recover only actual damages for breach of implied warranty. 995 S.W.2d 661, 668 (Tex. 1999). This statement, however, offers little guidance to determining the issue in this case. The plaintiff in *Hyundai Motor* sought to recover damages for personal injuries; thus, the breach of implied warranty claim there sounded in tort, not in contract. *See id.* at 662. The question in *Hyundai Motor* was whether a trial court must ask the jury to make the same factual determination separately for each legal theory when claims for breach of an implied warranty and strict liability are both predicated on the dangerousness of a product's design. *Id.* at 662. The precept cited by Appellants is taken from the supreme court's discussion regarding the similarities and the differences between a strict liability claim and breach of implied warranty claim for purposes of determining the jury charge issue. *See id.*

14

at 668. The court made no determination whether attorney's fees are recoverable for breach of implied warranty.

Appellants also cite two other cases as holding that attorney's fees are not recoverable for a breach of an implied warranty claim. The first case is *7979 Airport Garage L.L.C. v. Dollar Rent A Car Sys*., 245 S.W.3d 488, 509 n.31 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). There, the court discussed the award of attorney's fees for breach of implied warranty in a footnote but also made clear that the plaintiff was not seeking attorney's fees based on its breach of implied warranty claim *Id.* Rather, the plaintiff requested its attorney's fees based on its breach of contract claim and had sought its attorney's fees for breach of implied warranty only on the ground that the fees were intertwined with its breach of contract claim. *See id.* Moreover, the court in *7979 Airport Garage* did not have the benefit of the supreme court's decision and analysis in *Medical City.*

Appellants also cite *Basic Energy Service, Inc. v. D-S-B Properties, Inc*., 367 S.W.3d 254, 269 (Tex. App.—Tyler, 2011, no pet.). In *Basic Energy*, the court stated, without analysis, "recovery of attorney's fees for a common law breach of implied warranty claim is not authorized by statute." *Id.* As support for this proposition, the court cited *7979 Airport Garage.* However, as discussed, the *7979 Airport Garage* court made clear that, in that case, the plaintiff had sought

attorney's fees based on breach of contract, not based on breach of an implied warranty. *See 7979 Airport Garage*, 245 S.W.3d at 509 n.31.

For the reasons discussed, the authorities cited by Appellants do not change our conclusion in this case. *See Medical City*, 251 S.W.3d at 60–63; *see also /2 Price Checks*, 344 S.W.3d at 387–88. Civil Practice and Remedies Code section 38.001(8) permits an award of attorney's fees for a suit based on a written or an oral contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). As pleaded and tried to the jury in this case, Crown's breach of implied warranty of merchantability claim is such a claim. Therefore, Crown was entitled to its attorney's fees under section 38.001(8). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *Medical City*, 251 S.W.3d at 60–63; *see also 1/2 Price Checks*, 344 S.W. at 387–88. We hold that the trial court did not err in awarding Crown its attorney's fees under section 38.001(8).

We overrule Appellants' sole issue.

### Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

16